Dr. Reddy's Laboratories, S.A. Okay. The next argued case is number 18-2167, Indivior Incorporated v. Dr. Reddy's Laboratories, S.A. Mr. Martin. Mr. Martin. Good morning, Your Honors. May it please the Court. The District Court abused its discretion in entering a preliminary injunction against Dr. Reddy's continued sale of Suboxone film. I would like to focus on three points today. First, this entire lawsuit is claim precluded under this Court's recent decision in simple error. Second, even if plaintiffs could get past claim preclusion, they still are not likely to succeed on the merits due to either a specification disclaimer or a violation of Section 112's written description requirement. And third, the injunction should be vacated as quickly as possible for the benefit of both Dr. Reddy's and the public who is looking for this generic version of Suboxone film. I would like to start with the claim preclusion issue. Plaintiffs have identified what they say is only one distinction between the asserted claims of the 514 patent, as to which we already have a final judgment of non-infringement, and the asserted claims of the 305 patent, and that is this drying issue. Drying appears in two places in Claim 62 of the 514 patent. First, the wet matrix, what the films of both the 305 and the 514 start out as, the flow of the matrix. Your problem is that it's not in the claim 26, right? Drying. It is not explicitly in Claim 26. However, there's absolutely no dispute between the parties, and Judge O'Connellty also found this, that the final limitation in Claim 26 and also Claim 1, which is the continuously cast film, is a film which has been dried. And this was not a random admission by the plaintiffs. They had to make this admission because the prior art shows that there were examples such as the Schmidt reference, in which you had uniformity up until the drying step. To get past Schmidt for purposes of anticipation, and we did make an anticipation argument below, the plaintiffs conceded that the continuously cast film and that final limitation is a film which has been dried. That is exactly the same thing as the matrix subsequent to casting and drying. And why did he grant a preliminary injunction which presumes infringement when they've been found not to have infringed on the earlier patent? That is the question we've been asking ourselves too, Your Honor. Because in our view, there's absolutely no difference between the final cast film in Claim 62 of the 514 patent, which is a, again, the matrix subsequent to casting and drying, and the continuously cast film in Claim 26 and Claim 1 of the 305, which they repeatedly agreed, and we have the citations in our brief. I could walk through them again. They repeatedly stated, is a film that has been dried. What we think happened was that Judge McNulty below was confused by what Judge Andrews did in the Delaware case, and viewed Judge Andrews as having found specification lexicography, that the shared specification of the two patents defines the word dried a particular way. And so if you read Judge McNulty's decision, what you get a flavor of is that because the word dried was gone, he thought he had to read the claims of the 305 patent differently. But Judge Andrews in Delaware did not find that there had been specification lexicography. He found that there had been a specification disclaimer. And his repeated statements that you could not, you cannot read the shared specification of these two patents without finding a disavowal could not be clear. So we just think Judge McNulty got that wrong. He also committed what we thought, we think is an elementary error of black letter patent law by finding we did not have a substantial anticipation defense, because in plaintiff's words, the final claimed film is a solid film, which plaintiff's counsel agreed below, is a film which has been dried. He found that it has to have been dried. There's a drying limitation for purposes of anticipation. But then when it came to claim preclusion and infringement, he found that there was no language in the claims which imported a requirement of drying. You cannot obviously have different claim constructions for purposes of anticipation and infringement. So if the way plaintiffs got past anticipation is to say the final film is a film which has been dried, just like the final film in the 514 patent, that that had to also apply for purposes of our claim preclusion argument, as well as our argument that we are unlikely to infringe this patent, even if you get past claim preclusion. And the disclaimer is that there was no top drying? The disclaimer, Your Honor, is a disclaimer of what Judge Andrews found is that there's a disclaimer of using solely conventional convection air drying from the top, because what the specification says is if you use that type of drying, then it results in non-uniform films. And the claims of both the 305 and the 514 are the uniform films. And that was not, again, just a random statement in the specification. Throughout the specification, there are repeated statements by the applicants that if you use what they refer to as conventional drying, it results in non-uniform films. They explain why it results in non-uniform films. There are a couple of different factors at play, the formation of the skin on top, as well as some lifting up from the conveyor belt that occurs, which results in non-uniformity. So they explain all that. They have an example. It's example CG in the specification, where they say that when they used, quote, conventional drying rather than the uniform drying method of the present invention, they failed to maintain drug content uniformity. So throughout the specification, and they distinguish prior art in the specification on the basis that it used conventional drying methods, again, rather than the methods of the present invention. That's at column 3, line 7 to 27. So... I understand your argument that the claim through the continuously cast film limitation includes drying, but do you think that's even required? I mean, I look at some of our case law on specification disclaimer, including, for example, the Simon versus Advance County vascular case, where this court said, where the specification makes clear that the invention does not include a particular feature, that feature is deemed to be outside the reach of the claims of the patent, even though the language of the claims, when without reference to the specification, might be considered broad enough to encompass the feature in question. So does it even matter? I mean, I think ultimately there needs to be some textual hook in the claim to which you can apply the disclaimer. Plaintiffs sometimes argue that we have identified no textual hook. We think there is a textual hook. That final continuously cast film is a film which everyone has now agreed is a film which must have been dried. We think this case is actually just like the Mylan, the medicines company versus Mylan case from last year, in which you had... It's actually remarkably similar. There you had two patents. One patent required the use of efficient mixing explicitly. The other patent didn't... And they had the same specification. The other patent's claims did not require use of efficient mixing. But as Your Honor was just saying, this court went back and looked at the specification, saw that the specification described efficient mixing as the only way possible to obtain the claim degree of drug purity in the claims, and so found that there  the claim, just read by itself, was not specific to the use of efficient mixing. Here, both the 514 and the 305 patents require a drug content uniformity measurement that shows a lack of uniformity of no greater than 10%. When you look at the specification, it says that to have that degree of drug content uniformity after going through the drying process, you cannot use solely conventional convection air drying from the top. What we use... You said earlier that the public is waiting for a generic version of this product, which of course isn't a legal argument. But is there no generic for this product? Well, that does go to the equities, Your Honor. There is no generic version of this product on the market right now. There is a generic tablet that's available on the market. And so Judge McNulty said, in essence, the lack of a generic film isn't a big deal because the active ingredient is still available in a tablet form. The undisputed evidence below, however, was that for many people, they're unable to use the tablet. You have to keep it under your tongue for about six minutes for it to dissolve. And many people can't do that. They don't like the taste, the evidence was. And so they swallow it too quickly. And if you swallow it too quickly, you don't get the right dosage, whereas the film only has to be under your tongue for a matter of seconds in order for the dosage to be delivered. And again, the undisputed evidence below was that allowing access to a generic film would not just reduce the cost, but would meaningfully increase access even to the underlying active ingredient for the many people who can't afford the brand, which isn't covered by many insurance companies because it's so expensive, including, the evidence was, the insurance, the VA insurance. I thought you said in your brief that one of the harms that you were likely to suffer was that the patentee was going to produce the generic version before your product hit the market. And that is certainly still a risk, Your Honor, even if they don't release the authorized generic, however. And there's some evidence in the confidential versions of the briefs dealing with authorized generics and other potential market entrants. The head start we got. You offered that argument without any support? Oh, no, certainly not, Your Honor. The evidence in the record about the authorized generic and other potential market entrants appears in the confidential version of the appendix, for example, at pages 96, 78 to 79, Your Honor. I would say that Dr. Reddy's was the first company to defeat the plaintiffs in the Hatch-Waxman litigation. It was the first, and also to receive FDA approval. So we had, as of June, a significant first-mover advantage. Right now, we believe we still have a significant first-mover advantage if we can get onto the market. If, however, this injunction drags on. Every day it drags on. The head start we got by defeating them in Hatch-Waxman and getting the FDA approval erodes further. And every day is a day in which the tens of thousands of people who can't use the tablets are left without access to the underlying active ingredients. And you don't have to take our word for the significance of the film over the tablets. You can actually look at plaintiff's brief and the co-pending appeal from the Delaware litigation. What they say in their brief in the Delaware litigation, and this is at, excuse me, this is at page 8 in their brief in the Delaware case, they point out that the tablet as opposed to the film presents abuse risks. And these are patients who have an opioid abuse disorder. They also say that many patients have difficulty with the tablets, which, as I explained earlier, need to be kept under the tongue for six minutes. And that patients who swallow a tablet before it's dissolved do not receive the proper dose. So in the Delaware case, plaintiffs themselves are touting the advantages of the film over the existing generic tablet. Which particular paper are you referring to in the Delaware case? So I'm referring to the plaintiff's opening brief in the co-pending Delaware appeal. Before this court. Right. Which is case number 172587, Your Honor. So going back, sorry, Your Honor. Well, no, we're into your rebuttal time. You can use it or not, as you wish. I'll wait, Your Honor. Thank you. Okay. Mr. Ellicott. May it please the Court. I have a few quick points I'd like to make. The claims of the 305 patent are different from those that were litigated in Delaware in the 514 patent. They don't contain the words dried and dry. Indeed, not only are they not there, they were deleted. And under the law of this Court, in Blackbird, in Laringeal, and other cases, that fact means that the person of ordinary skill in the art reading the claims, reading the specification in the prosecution history, will understand that that is no longer part of the claims. But the product being described in the patent, both patents, one's a continuation of the other. The specification's the same, right? That's correct, Your Honor. It has to be drying. I'm sorry. It has to be drying. Drying will necessarily take place to have a final film. The film has to be dried. Otherwise, there's nothing to put under the tongue. That doesn't mean that drying is claimed, and it doesn't mean that how drying is performed is in any way limited. The specification, when you look at what continuously cast film means and how it's restricted, is very clear, and Judge McNulty found accordingly. For example, there's a portion of the specification which describes viscosity, and this is in column five, as an entirely different approach to controlled drying, to achieve uniformity. It's described as an alternative. Once dried and drying are not part of the claim, then the issue of what happens in Delaware is no longer important here. There's been a concession. There must be a textual hook. I'm sorry. How do you respond to this court's decision in PsyMed Life Systems versus Advanced Cardiovascular, where in the context of claim construction, this court said that it doesn't matter. It said, where the specification makes clear that the invention does not include a particular feature, that feature is deemed to be outside the reach of the claims of the patent, even though the language of the claims, read without reference to the feature in question. So even though the word drying is not in the claim, the argument being that based on cases like PsyMed, that specification disclaimer still is operative. Your Honor, in MBO and in pacing, which is one of the cases that DRL has relied on, it's very clear that you need a textual hook. I'm not limited to the cases they're relying on. I understand. But you should be looking at all of this court's precedent, and this is a case that this court has decided. And, Your Honor, I'm pointing to two such precedents that at a minimum would go the other way and require a textual hook. That's pacing in MBO. The other thing here, these are composition claims. And what we understand DRL to be doing is trying to import a limitation about process into the claims. Are you familiar with the case I'm asking you about? You're asking me about PsyMed? PsyMed versus Advanced Cardiovascular, where the claim was directed to a particular dilatation catheter. So it also was directed to a device or product. And I don't know whether this was addressed in the opinion, but there's a bar to simply reading in process claims from Baldwin and Vanguard, and I don't know whether PsyMed addressed that. That was addressed in the medicines case that DRL relies on. In the medicines case, the key, and this is in a footnote in the opinion, is efficient mixing was allowed to be read into the composition claim because the batches limitation of which it formed a part had been defined in terms of a particular process. We don't have that here, and the medicines case suggests in that footnote the decision would have been different otherwise under Vanguard and Baldwin. So we believe a textual hook is required. The textual hooks identified was continuously cast film, it seems. Initially, there was an emphasis below that there need be no textual hook, that there is a freestanding disclaimer. There was no finding of a freestanding disclaimer. The decision below was rooted in the words dried and drying. But on continuously cast film, I think there's something very important that the court needs to understand. DRL admitted, this was in the Delaware proceeding, that its film was a cast film, and that's part of the record in this case. It's Exhibit 32 to the Langer Declaration. That's a docket entry 71. It's also clear from Appendix 4040 from the trial opinion that there was an admission that DRL's film was a cast film, and in this case, when trying to argue that the claims were essentially the same, DRL said that a cast film means materially the same thing as a continuously cast film. That's at 356 in the oral argument. It's at 5962, and it's in Dr. Amici's declaration at 5922 to 23. So there's been an admission, essentially, that their film is a continuously cast film. That's crystal clear. We heard reference to, Your Honor, I don't know if I've answered your question fully. I was going to move on to a different issue. Oh, no, you answered my question. I think your response is, I understand. Okay. Thank you. So I pointed already to the important distinction between a composition and a method claim. There are various steps that would need to occur to make a cast film, for example, mixing. Yet there would be no reason to start adding mixing limitations to this claim, even if those are necessary or integral. That was the Markin-Imagi case, where there was a claim to a data, a tape spooling device, and there was no mention in the claim of a method for measuring tension. And the court said that can't be read in, even though it's necessary to the operation of the invention. In the example given, I think it's very helpful, a claim to an engine providing motive power to a car should not be construed to incorporate a limitation for an exhaust pipe, though an engine may not function without one. That's essentially what's going on here. They're saying, oh, since the claim, since the film must perforce be dried, we can take whatever the judge construed dried and drying to mean and put it in here, even though those words are not part of the claim. And then I had mentioned Baldwin and Vanguard. Baldwin, the courts, the court said in that case, and this was a key again in the decision distinguishing Baldwin, courts must generally take care to avoid reading process limitations into an apparatus claim. And in Vanguard, a novel product that meets the criteria of patentability is not limited to the process by which it was made. Your Honor, I take it that you are making some of these very arguments in your appeal from Judge Andrews' decision in the Delaware case. Your Honor, the appeal, which will be heard in the first quarter of this year, we're arguing that there shouldn't be any disclaimer attaching to the words dried and drying. Are you arguing in that based on the same argument you're presenting here about how there shouldn't be this limitation, this kind of process shouldn't be read into the claim? We're certainly arguing in that case, among other things, that process limitations should not be read into composition claims. But just because the judge in Delaware, we believe, erred in reading dried and drying as process limitations, that's a different issue from here. The same principle applies. We're certainly, though, not precluded from pointing to Baldwin. I understand, but you're looking at a likelihood of success issue in a preliminary injunction, where some of the arguments, the legal arguments that you're making, are going to form the basis of the arguments you're making in your other appeal, where a district court has already ruled against you. Doesn't that kind of undermine your likelihood of success argument? Your Honor, there's a likelihood of success here. The court in Delaware, and this is at Appendix 20007, it addressed the whole issue of what had been decided in Delaware. And the Judge McNulty, the district court judge, said, this is referring to the Delaware judge, he found that individuals disclaimed conventional convection air drying from the top. So Judge McNulty was fully aware of what was determined in Delaware and determined based on these words, the words in these claims, in Claim 1, Claim 62, which don't have dried in drying, that the difference is whether the language continuously cast film requires drying or not. The other claim has drying, right? That's the difference. The other claims in the 514 patent had drying in. When we received the ruling with which we did not agree, Equestive deleted those words from the claim, lest the person of ordinary skill in the art would be confused in any way. They're gone from the claims that are asserted here. So we're in a different situation as far as likelihood of success on the merits is concerned. We've established the likelihood of success on the merits based on these claims without drying in drying, with the judge fully aware of what had taken place that formed the majority of the argument below. We believe as well that we're going to succeed in removing the disclaimer from dried in drying in the Delaware case. And now the court, on an abuse of discretion standard, is weighing whether it should upset the apple cart, irreparably change the market, irreparably harming in divvy or in Equestive. That is what would happen if there is no preliminary injunction. When in a few months' time, if there's no disclaimer, even when the words dried in drying are there, the claim preclusion, issue preclusion, and written description arguments go away. We've heard about other factors. There are four factors here. There isn't any serious argument about any legal error or clear error. The court looked at the evidence on irreparable harm, and in this case, 99 percent of in divvy or U.S. revenue derives from Suboxone film. There will be a number of people whose jobs will be lost if DRL is permitted to resume its launch, and there are products that will help people who need help with other dependence addictions, treatments for cocaine addiction, alcohol addiction. All of that will be put on hold. We don't know whether it will resume or not. That's the stuff of irreparable harm. Now, DRL, my friend at DRL will certainly disagree with what happened below, but that's not the stuff of an abuse of discretion. On the court, we'll look below also at the competing public interests. We don't know what price DRL will price its product at exactly. That's not in the record, but it assures that it will be cheaper. But in this case, the court found that in divvy or would not be able to launch, develop other products, they'd be delayed for, on average, two years. So while DRL may disagree with the district court below, that's not the stuff of clear error and it's not the stuff of an abuse of discretion. I'm reminded of, I don't remember the case, but Judge Friendly is often quoted on the standard for abuse of discretion, it's as if the reviewing court must have a sense that the district court had come close to losing its senses. We don't have such a thing here. There is no abuse of discretion. DRL didn't even come forward with clean constructions of the sentence as part of our case law. I'm sorry, Your Honor. I don't think losing his sentence is part of our case law precedent. I think it's actually cited in an older decision of this Court about 20 years ago, but I couldn't cite chapter and verse. I did look into that. Here we have a preliminary record. The judge pointed to the preliminary nature of the record. Witnesses were not provided. The Court looked at the patent, saw that a continuously cast film can be made in many, many ways, that the claim, presumably saw that the claim also is a composition claim, not a process claim, and refused to allow DRL to import that limitation here. There is no reason now why that should happen through the reviewing court. We pointed to the case, the RICO decision, which held that even under those circumstances the issue of claim construction is reviewed or can be reviewed under an abusive discretion standard. Again, the market would be irretrievably changed, individually requested, irreparably harmed, and all of this would be for naught. Not only if we win at the end of the case, as we expect to do, but if this Court decides that there was no disclaimer in the first case when it hears arguments in just a few months' time. Unless the Court has questions. Thank you, Your Honor. There was a lot of discussion just now about what the standard is of review. And an abusive discretion is always committed when a district court makes an error of law. The application of claim preclusion is a question of law. The application of issue preclusion, based on Judge Andrews' decision, is a question of law. Claim construction is a question of law. These are all legal issues that we think Judge McNulty committed error with respect to. Plaintiff's counsel argued that the word dried was deleted. The word dried was not deleted. This is not a case like MBO where some claims said that there had to be an immediate retraction of a needle and other claims left out the word immediate. Here the word dried was replaced with different phrases. The final limitation of the claim in the 514, which referred to measuring uniformity in the matrix subsequent to casting and drying, was replaced with a phrase measuring uniformity in the continuously cast film. Plaintiff's repeatedly argued below in response to our anticipation argument that when that uniformity is measured in the continuously cast film, it's after drying that the continuously cast film is exactly the same thing as a matrix subsequent to casting and drying. And the language here could not be clearer. Page 379 in the appendix, for example, the fact of the matter is the claim is to the final film and that film has been dried. Page 327, the final film of the 305 patent claims is dried. They repeatedly argued below that this just that the films in the 305, just like the films in the 514, despite starting out as a flowable matrix, wind up as a dried film. Drying is an element of these claims. There's a suggestion that a person of skill in the art would not read these claims as requiring drying. Here's what their expert actually said. This is page 10,099 in the appendix. A person of ordinary skill in the art reading the claims of the 305 patent would understand that drying occurs. So you go from a wet matrix, you wind up with a final dried film, that's when you measure uniformity. It is exactly the same thing in the 514 and the 305. This really should be a textbook case for claim preclusion under simple error because plaintiffs have identified no other differences between the two claimed films. Plaintiff's counsel argued that we're trying to read a process limitation into what is a composition claim. That is not the case. These claims are limited to films which are cast films. The specification explains that there are various methods of making a film. You can have cast films, you can have extruded films, you can have cast films that are cast into sheets, you can have cast films that are cast into individual wells. These films must be films which are created through a continuous casting method, a particular process. In fact, plaintiffs distinguished the prior art during prosecution on the basis of the process used to make these claimed films. If you look at, for example, page 4357 in the appendix, the patent prosecutor this is the very last office action for the 305 patent, distinguished prior art which cast into wells rather than into a particular sheet. They were distinguishing the prior art based on the process. If you look at Dr. Langer, their expert's declaration below, he again distinguished the prior art on the basis of the process. This is at page 1316 in the appendix. So the requirement that a particular process be used is right in the claim and they relied upon that to get these patents issued. They relied upon it to address potential anticipation and obviousness arguments below. This case in that way is just like Medicines Co. Here, there's a requirement of a cast film. In Medicines Co., there was a requirement that the film be created through a compounding process. And what this court said in rejecting an argument that there was an improper effort to read a process limitation into the claims, it said, and this is at page 1304 of the Medicines Co. v. Milan decision. It said, indeed, our decision does not impermissibly add a process limitation to a product claim that does not require a process because the specification's definition of batches by itself imports a compounding process, ejects a compounding process as a limitation. Here, we don't have to go to the specification to see that a certain process is required to make this composition. It's in the claim itself. It has to be made with a casting process. On the question of why the court should address these issues now and not just wait, which I think was suggested, plaintiffs actually opposed our motion to expedite this appeal and argued to the motions panel that there was no reason to hear this case quickly, just wait for the 514 case. Obviously, the motions panel rejected that suggestion because this was set down for an expedited appeal. We have no idea when the 514 case will be argued. We have no idea when that case will be decided. What we do know is that in the meantime, there are many people who are not getting treatment they need from a generic version of the film and that DRL's opportunity to enjoy its first mover advantage, which it gained by winning the Hatch-Waxman litigation in Delaware and getting FDA approval, is eroding every day. If plaintiffs thought they had a good argument on the 514 case, what they could have done is go to Judge Andrews and sought an injunction pending the appeal. They then could have come to this court on the 514 case and sought an injunction pending appeal. They didn't do that. Instead, they took this 305 patent, which is not patentably distinct from the 514 case, and sought emergency relief from a different district court judge without all of Judge Andrews' familiarity with the underlying technology and the claim construction gained through a Markman hearing and a full week-long trial, and got him to enter a TRO and an injunction on an emergency basis, and now we're fighting that injunction. That never should have happened under Simple Air. They should have done this through the 514 if they thought they had a good case, and the fact they didn't, I believe, is telling on the preliminary injunction standard where they're required to show a likelihood of success in the merits. Are there no further questions? Thank you, Your Honors. Thank you both. The case is taken under submission. That concludes the argument process for this morning's hearing. All rise. The Honorable Court is adjourned from day to day.